23 N.J. Super. 255 (1952)
92 A.2d 851
THE BOROUGH OF ROCKLEIGH, IN THE COUNTY OF BERGEN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY AND PFEIL REALTY CO., A CORPORATION OF NEW JERSEY, PLAINTIFFS,
v.
ASTRAL INDUSTRIES, INC., A CORPORATION OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided November 14, 1952.
*256 Messrs. Freeman & Kroner, attorneys for plaintiff Borough of Rockleigh.
Messrs. Chandless, Weller, Kramer & Frank, attorneys for plaintiff Pfeil Realty Co.
Mr. Walter H. Jones, attorney for defendant Astral Industries, Inc.
GRIMSHAW, J.S.C.
The plaintiff Borough of Rockleigh seeks an injunction to restrain an alleged violation of its zoning ordinance by the defendant. The charge is that the defendant has extended improperly a nonconforming use of its premises.
The Borough of Rockleigh is a very small community in the most northerly section of Bergen County. It has a population *257 of 105 people. There are 25 homes in the borough. Its commercial activities are confined to a riding stable, a combination garage and welding shop and the plant of the defendant corporation. All of the business activities are located in one neighborhood.
Defendant's building stands on a plot approximately 550 feet by 310 feet. It was originally built to house an indoor polo field. In 1942 the property was purchased by a corporation known as Aero Metalcraft Corporation, which manufactured mufflers for planes, chairs, cabinets, and later, parts for military tanks.
In 1948 the Aero Metalcraft Corporation became bankrupt. Thereafter, by arrangement with the trustee in bankruptcy, the defendant took possession of the premises in the latter part of March or early April, 1949. On April 8, 1949 defendant contracted to purchase the lands and building from the trustee in bankruptcy and the contract was later consummated by the delivery of a deed on July 26, 1950.
In 1924 the Borough of Rockleigh adopted a zoning ordinance under the provisions of which the district in which the property now owned by the defendant is located was classified as residential. In 1944 an amended zoning ordinance was adopted. This ordinance, it is conceded, was passed for the benefit of defendant's predecessor in title, Aero Metalcraft Corporation. In this latter ordinance the property in question was classified in the "D" or light industrial zone. Light manufacturing which is permitted in the "D" zone, was described in the ordinance as follows:
"Section 4. District D Zone. (a) 2. Light manufacturing which is herein defined as the converting of raw, finished or unfinished material into an article or articles of a similar or different character, purpose or use, printing, publishing, engraving, woodworking, carpentering, cabinet making, of any nature which does not require power of any kind more than the equivalent of five (5) H.P. of electrical energy per machine and which does not involve or require hammering or striking together or beating of metal or hard substance." *258 By a further amendment to the zoning ordinance adopted on April 5, 1949 the district in which defendant's property is located was again classified as residential.
On April 5, 1951 the defendant applied for and was granted a building permit for the erection of a 250,000-gallon water tank. The application was accompanied by plans and specifications. Immediately thereafter the defendant spent or obligated itself to spend the sum of $85,000 for this project. No water mains have ever been laid in the borough. The sole water supply is from wells. And it is not disputed that the reason for the erection of the tank was a desire on the part of the defendant to provide itself with fire protection. Defendant's intention had been known by the borough officials for about a year. They had registered no objection to the water tank. They did, however, express disapproval of the introduction of water mains into the borough. The reason for such disapproval was the fear as expressed by the mayor that the availability of water would cause an influx of new residents, a result which was not desired by the council.
After the building permit was issued the defendant proceeded with the construction of the tank. This fact was also known to the borough officials. No objection was registered by them until the tank was practically completed. Then, on May 4, 1952, the complaint in this action was filed.
I am satisfied that at the time when the erection of the water tank was projected the defendant was engaged in operations which constituted a legal nonconforming use of its property. This conclusion is borne out by the statements of the borough officials. In his brief filed before trial the borough attorney conceded that Aero Metalcraft Corporation conducted its business as a permissive use under the ordinance of 1944 and that defendant's operation was a legal nonconforming use under the ordinance of 1949. He then contended that the erection of the water tank was not a permissible extension of the nonconforming use. In this stand he was supported by the mayor, who testified that the borough had no objection to defendant's business as such. The objection was *259 to the tank and the contemplated increase in the water facilities of the borough.
Before the close of the hearing, however, the president of the borough zoning board was called as a witness. He testified that on the Sunday preceding the opening of the hearing, at a time when the defendant's plant was not in operation and none of its officials were present, he, together with two other borough officials, went to defendant's premises on the pretext of seeking a location for an air raid siren. When there, however, they made an inspection of the building, seeking evidence of possible violations of the zoning ordinance for use at the trial. Why such questionable and shabby methods were used to obtain evidence does not appear, for at no time had any official ever been refused admittance to defendant's plant. In fact, the witness had been on the premises on several occasions.
In any event, the investigation disclosed that there were 25-horsepower motors attached to three air compressors. The air compressors were not in operation at the time of the inspection and there was no proof that the machines required 25-horsepower motors for their operation. And only one compressor was operated at any time. No evidence of any other violation or indicated violation of the ordinance was found. Yet on the strength of this evidence, plaintiffs, at the close of the hearing, charged that the defendant's entire operation was in violation of the zoning ordinance and sought to have it enjoined.
I do not feel that there was sufficient proof to justify a conclusion that in the operation of its plant the defendant was violating the zoning ordinance. Certainly the evidence falls far short of being sufficient to justify an injunction against the operation of the business which represents an investment of upwards of $390,000.
As a matter of fact, the real question is whether the erection of the water tank is an improper extension of the nonconforming use. It is well settled in this State that a pre-existing nonconforming use may not be enlarged or *260 radically modified. And also it is settled that the policy is to restrict rather than increase nonconforming uses. Speakman v. Mayor and Council of North Plainfield, 8 N.J. 250 (1951)
In this case, however, the proofs completely fail to establish that the defendant has increased the nonconforming use. Nor is there proof of an intention on its part to extend or vary its operations. The undisputed evidence is that the sole purpose for the water tank is to provide adequate fire protection for the defendant's plant. And such cannot be considered an extension of a nonconforming use.
This is a suit in equity, and equity principles must control. Defendant's intention to erect the tank was known to the borough officials for a year before construction was commenced. The building permit was obtained without objection. During the course of the construction of the tank the borough officials, aware of the activities which were going on, did nothing. They sat back until the defendant corporation had committed itself to large expenditures before taking action. Such conduct does not commend itself to a court of equity. In my opinion it would be inequitable for this court to interfere after defendant's position has been changed so drastically.
The plaintiff Pfeil Realty Company seeks a declaratory judgment setting forth the extent of the use to which defendant may put its premises under the ordinance. In effect, plaintiff is asking this court to indulge in speculation as to the future conduct of the defendant. The Declaratory Judgment Act provides no justification for such a request. New Jersey Turnpike Authority v. Parsons, 3 N.J. 235 (1949).
Judgment in accordance with the views expressed above.